AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

**FILED**

JUN 1 8 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

In the Matter of
*(Briefly describe the property to be searched
or identify the person by name and address)*

the Use of a Cell-Site Simulator to Identify the Cellular
Device(s) Used by ANDRE SMALLWOOD.

Case No. 4:18 MJ 193 DDN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

the Use of a Cell-Site Simulator to Identify the Cellular Device(s) Used by ANDRE SMALLWOOD,

located in the _____Eastern_____ District of _____Missouri_____ , there is now concealed *(identify the person or describe the property to be seized)*:

see "Attachment A."

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C., Sections 841(a)(1) and 846 | conspiracy to distribute controlled substances |

The application is based on these facts:
see attached APPLICATION, and AFFIDAVIT IN SUPPORT OF APPLICATION, FOR A WARRANT TO AUTHORIZE USE OF A CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICE(S). I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by the DEA and the FBI.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __180__ days (give exact ending date if more than 30 days: __12/18/2018__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Daniel Hill, Task Force Officer
DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 18, 2018

City and state:  St. Louis, Missouri

*Judge's signature*

Honorable David D. Noce, U.S. Magistrate Judge

*Printed name and title*

SAUSA:  Angie Danis

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN THE MATTER OF THE APPLICATION )
OF THE UNITED STATES OF AMERICA )
FOR A WARRANT TO AUTHORIZE USE OF )   No. 4:18 MJ 193 DDN
A CELL-SITE SIMULATOR TO IDENTIFY )
THE CELLULAR DEVICE(S) USED BY )   FILED UNDER SEAL
ANDRE SMALLWOOD. )

### AFFIDAVIT IN SUPPORT OF APPLICATION
### FOR A WARRANT TO AUTHORIZE USE OF A
### CELL-SITE SIMULATOR TO IDENTIFY THE CELLULAR DEVICE(S)

Daniel Hill, being duly sworn, deposes and says that he is a Task Force Officer with

the Drug Enforcement Administration ("DEA"), duly appointed according to law and acting

as such.

### Introduction

I am a deputized Task Force Officer with the DEA and have been since 2015. In addition

to being deputized as a Task Force Officer, I have been employed since January 2009 with the St.

Louis County Police Department, to include three years working narcotics/violent crimes in the

St. Louis County Police Department Neighborhood Enforcement Team. During my law

enforcement experience, I have conducted and been part of complex narcotics investigations

targeting drug trafficking organizations dealing in marijuana, methamphetamines, heroin, cocaine,

and other synthetic controlled substances. Through the course of the investigations, I have

conducted surveillance, participated in undercover operations, utilized confidential

informants/sources, executed search warrants, utilized precision locator warrants and executed

arrest warrants. As a result of my experience and training, I am familiar with the manner in which

illegal drugs and bulk U.S. currency are distributed and transported. Furthermore, I have

investigated drug trafficking organizations responsible for violations of Title 18, United States

Code, Sections 1956 and 1957, in addition to receiving continuing DEA training focused on money laundering investigations and asset forfeiture procedures.

As a result, I am, and agents assisting in this investigation, are familiar with matters including, but not limited to, the means and methods used by persons and drug trafficking organizations (DTOs) to purchase, transport, store, and distribute illegal drugs and to hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogue used by drug traffickers.

The facts alleged in this affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to extend location and monitoring of the location of a cellular telephone as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

I am currently part of a team of experienced law enforcement officers/agents investigating the criminal activities, specifically the fentanyl distribution, of **Andre SMALLWOOD**, Demetrius JOHNSON and others. SMALLWOOD is a male, born on January 17, 1986, who has extensive criminal history to include convictions for Possession of a Controlled Substance, Resisting Arrest, Unlawful Use of a Weapon, Trespassing, and Tampering with Motor Vehicles.

I am an investigative and law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and as such, I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516, Title 18, United States Code.

## Background and Purpose of Affidavit

I make this affidavit in support of an application for a warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator") to identify the cellular device(s) used by:

ANDRE SMALLWOOD (DOB: 1/17/1986; SSN: XXX-XX-1031) (hereinafter the "**target subject**").

The facts alleged in this Affidavit come from my own investigation, my training and experience, and information obtained from other investigators and witnesses. Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other agents/officers of the Drug Enforcement Administration and the Federal Bureau of Investigation, as well as other federal, state, and municipal law enforcement agencies (hereinafter referred to as "investigative agency(ies)") about this investigation.

Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(l) and 846 (hereinafter the "subject offense(s)") have been committed, are being committed, and will be committed by the target subject as well as others known and unknown (hereinafter the "target subject(s)"). There is also probable cause to believe that identifying the cellular device(s) used by the target subject will lead to evidence of the subject offense(s), including the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target subjects engage in criminal activity; and, that the cellular device(s) used by the target subject is being used in connection with the commission of the target offenses.

3

One purpose of applying for this warrant is to determine the cellular device(s) used by the **target subject**. As described herein, there is reason to believe the **target subject** and cellular device(s) used by the **target subject** are currently located somewhere within this district because the **target subject** is known to spend most of his time in this district.

Because collecting the information authorized by the warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," the warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127 (3) & (4). Therefore, the Application and Warrant include all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## Investigation and Probable Cause

The following facts alleged in this affidavit come from my own investigation, my training and experience, and information from other investigators and witnesses. As this affidavit is submitted for the limited purpose of establishing probable cause to determine the cellular device(s) used by the **target subject** as part of a criminal investigation, it does not set forth all of my knowledge regarding this matter.

On April 19, 2018, United States District Judge Audrey G. Fleissig signed an order authorizing the continued interception of wire and electronic communications to and from target telephone #7 and #8 (wire communications only) and the initial interception of wire and electronic communications over target telephone #9. All phones are used by Demetrius JOHNSON. Interception continued over target telephone #7 and target telephone #8, and initial interceptions over target telephone #9 began on April 20, 2018. Monitoring of target telephones #7, #8, and #9 ended at midnight on May 18, 2018.

Based on intercepted phone calls, it is believed the **target subject** is a major source of

4

supply of illicit drugs for the Peabody Housing Complex. Based on subscriber information and intercepted communications described below, your affiant believes the **target subject** is utilizing multiple cellular devices in order to further his drug trafficking activities. Your affiant believes the **target subject** is currently using (314) 541-4797 and (314) 941-6539 and has recently used telephone numbers (314) 410-5166 and (314) 302-8542, however, has since discontinued the use of the latter two telephones due to the overdose death (on May 3, 2018) and search warrant executions (on May 11, 2018), described herein.

On May 22, 2018, your affiant served a DEA Administrative Subpoena for cellular phone number (314) 541-4797 to T-Mobile USA, Inc., requesting subscriber information. On May 24, 2018, T-Mobile USA, Inc. provided the subscriber information as Andre SMALLWOOD, 1210 S. 11th St., St. Louis, MO. Investigators also learned via the subpoena response that this cellular account was established on July 26, 2016 and is still active.

On May 21, 2018, investigators served a DEA Administrative Subpoena for cellular phone number (314) 410-5166 to Verizon Wireless requesting subscriber information. On May 24, 2018, Verizon Wireless provided the subscriber information as EPAY EPAY, 3500 College Blvd., Leawood, KS 66211. Your affiant knows that drug distributors often subscribe their cellular telephones under names other than themselves in order to thwart law enforcement detection. Your affiant believes SMALLWOOD is doing this in order to evade the detection of law enforcement. Investigators also learned via the subpoena response this cellular account was established on March 5, 2018 and deactivated on May 5, 2018. Your affiant is also aware that narcotics traffickers often maintain possession and use of cellular telephones for shorter periods of time as a law enforcement counter measure.

On May 21, 2018, your affiant served a DEA Administrative Subpoena for cellular phone

5

number (314) 302-8542 to Verizon Wireless requesting subscriber information.  On May 24, 2018, Verizon Wireless provided the subscriber information as EPAY EPAY, 3500 College Blvd., Leawood, KS 66211.  Your affiant knows that drug distributors often subscribe their cellular telephones under names other than themselves in order to thwart law enforcement. Your affiant believes SMALLWOOD is doing this in order to evade the detection of law enforcement. Investigators also learned via the subpoena response this cellular account was established on May 5, 2018 and is still active, however, phone connection records indicate there has been no use of this phone since May 24, 2018.

On May 31, 2018, your affiant served a DEA Administrative Subpoena for cellular phone number (314) 941-6539 to Verizon Wireless requesting subscriber information.  On June 5, 2018, Verizon Wireless provided the subscriber information as EPAY EPAY, 3500 College Blvd., Leawood, KS 66211.  Again, your affiant believes SMALLWOOD is doing this in order to evade the detection of law enforcement. Investigators also learned via the subpoena response this cellular account was established on May 11, 2018 and is still active.

## **Relevant Interceptions**

Session #1866 – (314) 541-4797 (used by SMALLWOOD) – Interception occurred April 22, 2018 at 9:05 p.m. from Demetrius JOHNSON (utilizing target telephone #7).

| | |
|---|---|
| **SMALLWOOD:** | Hello |
| JOHNSON: | Hey, you already seen Scooby? |
| **SMALLWOOD:** | No. |
| JOHNSON: | When you going down there? |
| **SMALLWOOD:** | In a minute.  I guess I'm going on the way back. |
| JOHNSON: | They say they ain't got shit. |

6

SMALLWOOD:     Huh?

JOHNSON:       They talkin' 'bout they ain't got shit.

SMALLWOOD:     I'm finna get up and go down there now.

JOHNSON:       Alright he ain't call you?

SMALLWOOD:     He call me earlier, he call me witch you

JOHNSON:       Man that [U/I] be trippin bro

SMALLWOOD:     [U/I]

JOHNSON:       Hey that little... remember I called you with that little two (2)?

SMALLWOOD:     'Bout who?

JOHNSON:       That little two (2) I was tellin' you about?  Earlier.

SMALLWOOD:     I ain't... I ain't... you ain't never tell me... remember, I was doing something. I'm finna call you though. I'm finna get in the car and call you, right now.

JOHNSON:       Alright, just two (2), bro.

SMALLWOOD:     Alright.

Your affiant believes that JOHNSON called to see if **SMALLWOOD** had already met with "Scooby," a/k/a/ Gregory IVY, for the purpose of resupplying IVY with fentanyl. SMALLWOOD replied that he had not met with IVY yet. JOHNSON informed **SMALLWOOD** "they ain't got shit" meaning JOHNSON's supply of fentanyl is depleted. JOHNSON goes on to remind SMALLWOOD about a previous order of two (2) amounts of fentanyl (possibly two ounces, grams or other unit of measurement). **SMALLWOOD** reminds JOHNSON that he (**SMALLWOOD**) did not take the previous order as he was busy "doing something." **SMALLWOOD** tells JOHNSON he (**SMALLWOOD**) is going to get in the car, presumably to

7

go supply IVY with additional fentanyl and that he will call JOHNSON shortly from a different phone.

Session #1867 – (314) 410-5166 (used by SMALLWOOD) – Interception occurred April 22, 2018 at 9:11 p.m. to Demetrius JOHNSON (utilizing target telephone #7).

| | |
|---|---|
| JOHNSON: | Hello? |
| SMALLWOOD: | Yeah, bro. |
| JOHNSON: | Yeah, two (2), bro. |
| SMALLWOOD: | A'ight. Uh… what I was finna say? Uh… so the, uh… the whatchu called with Scooby, still [Unintelligible] that? |
| JOHNSON: | Yeah, yeah, yeah, yeah… whatever you got for Scooby. |
| SMALLWOOD: | A'ight. |

Your affiant believes **SMALLWOOD**, utilizing a more trusted phone, called JOHNSON back to finalize JOHNSON's fentanyl order.  JOHNSON again requested two (2) amounts of fentanyl (possibly two ounces, grams or other unit of measurement).  **SMALLWOOD** agreed and asked if the fentanyl was still supposed to go to IVY.  JOHNSON confirmed and requested **SMALLWOOD** deliver it to IVY.

Session #1869 – (314) 410-5166 (used by **SMALLWOOD**) – Interception occurred April 22, 2018 at 10:11 p.m. to Demetrius JOHNSON (utilizing target telephone #7).

| | |
|---|---|
| JOHNSON: | Yeah? |
| SMALLWOOD: | Hey, what I'm doing with this? Giving it to him? |
| JOHNSON: | Yeah, I'm finna come down there, soon as I, uh… do that I'mma call you. |
| SMALLWOOD: | Uh… shit, how long that's finna be? |

8

JOHNSON:        I'm finna leave [unintelligible] with this nigga Cram.  Shit, come
                down there 'cause keep on callin' me anyways.  I'm finna just come
                down there right now.

SMALLWOOD:      You don't know... you don't know how long though?  'Cause I was
                finna say, I just get it... I get it tomorrow.

JOHNSON:        Alright, I'll just give you a call then.

Your affiant believes SMALLWOOD called JOHNSON to, again, verify if the fentanyl

SMALLWOOD was supplying was intended to be delivered to IVY.  JOHNSON confirmed the

delivery was to be made to IVY and that he (JOHNSON) and "Cram" (previously identified in this

investigation as Christopher PIPES) were going to go "down there" to IVY's location.

SMALLWOOD asked if JOHNSON had an estimated time of arrival and offered, "I

(SMALLWOOD) just get it... I get it tomorrow," referring to JOHNSON's payment for the

fentanyl being delivered to IVY.  JOHNSON agrees to "give you a call then," or call

SMALLWOOD the following day.

Session #1876 – (314) 410-5166 (used by SMALLWOOD) – Interception occurred April

22, 2018 at 10:41 p.m. to Demetrius JOHNSON (utilizing target telephone #7).

JOHNSON:        Hello?

SMALLWOOD:      Hey that nigga Scooby uh... he owe me six fifty (650) 'cause they
                was a hundred dollars ($100.00) short.

JOHNSON:        [ASIDE: He said you owe him six fifty (650).  That was a hundred
                dollars ($100) short you gave him.  Whatever you gave him.]
                [BACKGROUND: IVY: Which one?]

SMALLWOOD:      Huh?

                [BACKGROUND: IVY: I sat there and counted in your face, right?]

SMALLWOOD:      Not the four fifty (450), on blood, that was one hundred dollars
                ($100.00) short.  That nigga... come on, he know I ain't gon' play
                that nigga.

9

[BACKGROUND IVY: One hundred dollars ($100.00) [Unintelligible] and the rest in… in [Unintelligible]. Alright]

SMALLWOOD:   Alright.

Your affiant believes SMALLWOOD called JOHNSON to report that IVY had provided a partial payment or a payment for a separate debt and the payment was $100.00 less than was owed. JOHNSON, who was now at IVY's location, relayed SMALLWOOD's report regarding the missing $100.00. IVY was overheard saying he counted out the payment in front of SMALLWOOD. SMALLWOOD informed JOHNSON that IVY was referencing a different payment of $450.00. IVY is overheard agreeing that he owed SMALLWOOD $100.00.

Session #2375 – (314) 541-4797 (used by **SMALLWOOD**) – Interception occurred May 3, 2018 at 9:53 a.m. to Demetrius JOHNSON (utilizing target telephone #7).

JOHNSON:   Hello?

**SMALLWOOD**:   Hey, where you at?

JOHNSON:   Crib.

**SMALLWOOD**:   Call… call me, call me flip.

JOHNSON:   Huh? Alright.

**SMALLWOOD**:   You see that three (3)- three (3)… huh?

JOHNSON:   Huh?

**SMALLWOOD**:   Call me flip.  Call my flip.

JOHNSON:   Alright.

Your affiant believes **SMALLWOOD** called JOHNSON to discuss something pertinent that **SMALLWOOD** did not want to discuss on his phone bearing number (314) 541-4797). After verifying JOHNSON was at his "crib," or home, where JOHNSON could safely talk,

10

SMALLWOOD requested JOHNSON call SMALLWOOD back on his flip phone[2] (314) 410-5166).

Session #1205 – (314) 410-5166 (used by SMALLWOOD) – Interception occurred May 3, 2018 at 9:53 a.m. from Demetrius JOHNSON (utilizing target telephone #8).

JOHNSON:          Yeah.

SMALLWOOD:    Call lil nigga, bro, tell him don't sell shit down there, everything dead, bro.

JOHNSON:          [Unintelligible]

SMALLWOOD:    They found the body, they just found the body.

JOHNSON:          Where at?

SMALLWOOD:    By Najah house, a white dude OD'd in his car, bro.

JOHNSON:          Who is Najah?

SMALLWOOD:    My people, Dell and their momma.  Where miss Bobby stay at in that lil alley right there, at the top.

JOHNSON:          Yeah.

SMALLWOOD:    He just OD'd bro.  He been there since like four (4:00) this morning.

JOHNSON:          Oh, yeah?

SMALLWOOD:    Yeah, bro, so you know they finna be on the hood tough, bro.

JOHNSON:          Who people was it? Or don't nobody even know?

SMALLWOOD:    Nope. We don't know.  We don't know.

JOHNSON:          Probably one of them little [Unintelligible]... one of them dude's people.  I'm finna call down.  I'm finna call Scooby, man.

---

[2] Based on my training and experience, I know drug dealers/traffickers commonly purchase the cheapest phones to be used for their criminal activities.  Flip phones, because of their lack of technology and features, are most often used as a "burner" or disposable phone that can be discarded if the drug dealer/trafficker believes it has been compromised by law enforcement.

| SMALLWOOD: | And tell him to chill everything out, bro. |
|---|---|
| JOHNSON: | Alright, bam, finna… Bam doing his own shit anyways, he's finna get in traffic. I'm finna call him right now. |
| SMALLWOOD: | Tell him to walk up there and see though. |
| JOHNSON: | Alright. |

Your affiant believes JOHNSON called SMALLWOOD's flip phone, as directed in the previous call. SMALLWOOD directs JOHNSON to call "lil nigga" and stop all drug activity because a white male had died of a suspected drug overdose[3]. The overdose victim had been found deceased in a vehicle in the area of "Nijah's" house. SMALLWOOD suggests that because of the overdose death, "they finna be on the hood tough" or the police are going to increase patrols in the area of the Clinton-Peabody housing complex. JOHNSON asked "who people was it?" referring to whose drug customer was it. SMALLWOOD replies he does not know whose customer the deceased male was. JOHNSON assures SMALLWOOD he will call IVY right away. SMALLWOOD again reaffirms to have IVY "chill everything out" or stop all drug sales.

Session #1308 – (314) 302-8542 (used by SMALLWOOD); Interception occurred May 5, 2018 at 4:53 p.m. to Demetrius JOHNSON (utilizing target telephone #8).

| SMALLWOOD: | Yeah, fool. |
|---|---|
| JOHNSON: | Yeah, who is this? |
| SMALLWOOD: | Dre, man. |

---

[3] On May 3, 2018, at approximately 9:00 a.m., St. Louis Metropolitan Police Department responded to a 911 call in the area of 1515 Hickory Ln., for a "call for help." Responding officer's contacted witnesses who stated they found Cameron Perry unresponsive in his vehicle. Perry was pronounced deceased at the scene. Responding officers located and seized a syringe and spoon with white powdery residue from inside Perry's vehicle. Phone records show Perry, using (314) 210-2308 was in contact Target Telephone #6, historically utilized by JOHNSON and members of the DTO, on May 2, 2018 and May 3, 2018. The last outgoing contact made on Perry's cellular telephone (314) 210-2308 was to target telephone #6. The sudden death investigation of Perry is ongoing, suspected to be an apparent drug overdose, and is being conducted by the SLMPD, however, based upon phone connection records and the fact Perry was found deceased inside the Peabody housing complex where JOHNSON is known to operate, it is your affiant's belief the JOHNSON DTO sold Perry the lethal dose of fentanyl.

| JOHNSON: | Oh.  Oh, oh, oh, oh. What's up? What the fuck you talkin' bout? |
| SMALLWOOD: | [LAUGHS] Alright. |
| JOHNSON: | Alright. This your... this the new one? |
| SMALLWOOD: | Yeah. |
| JOHNSON: | Alright. |

Your affiant believes SMALLWOOD called JOHNSON and identified himself as "Dre," short for Andre.  JOHNSON asked SMALLWOOD if "this the new one?" referring to SMALLWOOD's new cellular number replacing (314) 410-5166.  SMALLWOOD confirmed the new number is the replacement for (314) 410-5166.

On May 11, 2018, SLMPD Officers executed search warrants at 1426 Peabody Court, St. Louis, MO and 1437 Hickory Lane, St. Louis, MO.  During the execution of the search warrants, agents found three firearms, clear plastic bags containing white powder (later submitted to the SLMPD crime lab, tested, and analyzed to be approximately 66.66 grams of fentanyl), capsules containing a white powdery substance (later submitted to the SLMPD crime lab, tested, and analyzed to be approximately 150 capsules of fentanyl), digital scales containing a white residue, a blender containing a white residue and empty capsules.

Session #1453 – (314) 541-4797 (used by SMALLWOOD) – Interception occurred May 11, 2018 at 8:31 a.m. to Demetrius JOHNSON (utilizing target telephone #9).

| SMALLWOOD: | Yo, what's up, bro? What's going on? |
| JOHNSON: | Well just did that boy. |
| SMALLWOOD: | Yeah, on blood, man.... |
| JOHNSON: | Yeah, there wasn't nobody in there though. |

| SMALLWOOD: | That's good, man, that's great. I'm trying to see how the fuck they just go to do shit, bro. That's crazy. |
|---|---|
| JOHNSON: | I swear to god, man, mother fucker talking about him you hear me? |
| SMALLWOOD: | Who L? |
| JOHNSON: | Yeah, gotta be, bro. They gotta be on him you hear me? For them to go hit that mother fucker, then go hit his shit, bro. |
| SMALLWOOD: | Sh... Oh, man, that's uh... [U/I] bro. |
| JOHNSON: | Huh? |
| SMALLWOOD: | Tell [U/I] to just bump up later, bro. It had to be from... You know.. [U/I] you know. |
| JOHNSON: | I know, alright. |
| **SMALLWOOD:** | Alright. |

Based on this phone call, your affiant believes JOHNSON called **SMALLWOOD** to tell **SMALLWOOD** about the search warrants executed at 1426 Peabody Court and 1437 Hickory Lane. When JOHNSON said, "Well just did that boy," and **SMALLWOOD** acknowledges by stating "Yeah, on blood, man...," your affiant believes JOHNSON told **SMALLWOOD** that a search warrant had been served at 1426 Peabody Court. JOHNSON also told **SMALLWOOD,** "Yeah, there wasn't nobody in there though," and **SMALLWOOD** acknowledged. During the search warrant at 1426 Peabody Court, there was no one present at the residence. Based on these search warrants, your affiant believes **SMALLWOOD** discontinued the use of (314) 302-8542. In my training and experience, it is common for higher-level drug traffickers to switch their phone numbers following law enforcement interdictions.

14

## Summary of SMALLWOOD's various phones and their uses

SMALLWOOD's cellular telephone, (314) 410-5166, was utilized for the more illegal communication SMALLWOOD did not want to discuss on (314) 541-4797. Due to the nature of the communications on this cellular device, SMALLWOOD chose not to provide subscriber information that would have easily identified him to law enforcement. Furthermore, this cellular device was deactivated on May 5, 2018, two days immediately after the overdose death of Cameron Perry, a drug user associated with members of the SMALLWOOD DTO. As discussed in the provided transcripts and affiant belief statements, SMALLWOOD was attempting to insulate himself from the impending law enforcement investigation the overdose would likely have initiated, thus the deactivation of (314) 410-5166.

On the same day (314) 410-5166 was deactivated (May 5, 2018), (314) 302-8542 was activated as the replacement. (314) 302-8542 served the same illegal purpose as (314) 410-5166, as illustrated in the above provided transcripts, until SMALLWOOD, again, needed to insulate himself. The investigative team believes the search warrants executed at the two DTO stash locations on May 11, 2018, again caused SMALLWOOD to drastically limit and ultimately discontinue the use of (314) 302-8542. On the same day as the execution of search warrants, May 11, 2018, (314) 941-6539 was activated.

Based on the training and experience of the investigative team, it is known that drug traffickers obtain several cellular telephones to conduct their illegal drug-trafficking activities. Drug traffickers continually change or drop telephones in an effort to thwart law enforcement detection. They also may utilize a given telephone for an amount of time and drop the service for a period of time before resuming the use of the telephone again. They will compartmentalize

15

the use of their telephones as well, utilizing one telephone to contact sources of supply, another to contact local distributors, and others to contact narcotic couriers and so on.

The investigative team believes the target subject is practicing these methods. It is unknown if the **target subject** will resume using the aforementioned dropped telephone and/or acquire new telephone service. It is critical that the investigative team receive the authorization requested with this application to identify what telephone(s) the target subject is, in fact, currently using in order to further the investigation. Your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

In particular, as previously stated, I know based on my training and experience that individuals involved in organized criminal activity, such as drug trafficking, will often utilize cellular telephones for use with their criminal activities. Such cellular telephones will be used for a limited period of time to communicate with co-conspirators, after which time they will be discarded. Members of organized criminal activity will use multiple telephones for brief periods of time in order to shield their activities from electronic surveillance by law enforcement. Specifically, by using a telephone under a fictitious name for a limited period of time, individuals engaged in organized criminal activity hope to evade the discovery of their use of a particular telephone, and thereby hope to frustrate law enforcement's attempts to overhear their telephone calls.

In addition, I believe that identification of any and all cellular devices used by the target subject through the use of a cell-site simulator will constitute and lead to evidence concerning the commission of the subject offense(s). For example, by identifying the target cellular device(s) used by the target subject, the investigative agency(ies) will be able to determine through a review of available telephone records whether such telephones are subscribed under a real name. If they

16

are not, the target subject's use of telephones under fictitious subscriber information will itself constitute evidence of consciousness of being engaged in criminal activity. From my training and experience, I know that narcotics traffickers will frequently use fictitious subscriber names in order to shield their identities from law enforcement. To the extent the use of the cell-site simulator reveals that the **target subject** is using multiple cellular telephones for short periods of time, in addition to the **target subject**'s prior use of other cellular telephones, that itself constitutes evidence that the target subject is engaged in efforts to shield target subject's criminal activities from detection. Additionally, discovering the identity of cellular telephones used by the **target subject** may permit law enforcement to determine the identities of possible criminal associates and establish a factual predicate for the interception of wire communications over these telephones in furtherance of the current investigation.

The investigation has demonstrated that the target subject is using cellular devices in connection with the commission of offenses involving ongoing violations of Title 21, United States Code, Sections 841(a)(l) and 846 (the subject offense(s)).

It is critical that the investigative team be able to identify the cellular devices used by the target subject thereby assisting in the identification of the co-conspirators, aiders, and abettors who are participating in the illegal activities as well as the nature and scope of the illegal activities. Investigators believe that this authorization identify the existence of other communication facilities, including telephones, computers, e-mail and other electronic accounts used to by co-conspirators to communicate. Thus, your affiant believes that the requested authorization would be a valuable asset in achieving the overall goals of the investigation.

### Manner of Execution

The investigative agency(ies) plan to use the information requested in the attached Application to identify the cellular device(s) used by the target subject along with the telephone number, ESN or IMSI numbers assigned to or utilized by the cellular device(s).

Based upon discussions I have had with other law enforcement agents and in my training and experience, I am informed that cellular telephones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications.  When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication.  These signals include a cellular device's unique identifiers.

To facilitate execution of the requested warrant, the investigative agency(ies) and I seek to use an investigative device known as a cell-site simulator that sends signals to nearby cellular devices, including the cellular device(s) used by the target subject. As set forth in this affidavit, if authorized by the warrant that is being requested the investigative agency(ies) intend to employ a cell-site simulator, to detect radio signals that are emitted automatically at the time a cellular telephone is turned on, and periodically thereafter as long as the phone remains on, regardless of whether a call is being made, to communicate with the cellular infrastructure, including cell towers. The cell-site simulator sends signals to nearby cellular devices, including the cellular device(s) used by the target subject, and in reply, nearby cellular devices will broadcast signals that include unique identifiers.  These signals contain identifying numbers for the telephone (e.g., the telephone number, Electronic Serial Number ("ESN"), or International Mobile Subscriber Identification ("IMSI") number). The investigative agency(ies) intend to send signals in the vicinity of the target subject to connect with any cellular device(s) used by the target subject that will cause it, and non-

18

target phones on the same provider network in close physical proximity, to emit unique identifiers, which will be obtained by the technology.  The investigative agency(ies) will use the information collected to determine the currently unknown identifiers of the cellular device(s) being used by the target subject.  By employing the technique at two or more locations, through the process of elimination, the investigative agency(ies) can isolate the ESNs or IMSIs corresponding to the specific cellular device(s) used by the target subject, even if the cellular device(s) is located in a house, apartment, building, or other private space.  The investigative agency(ies) do not seek, and the cell-site simulators does not intercept, the content of any telephone calls, text messages or electronic communications.

The investigative agency(ies) will use the cell-site simulator when they have reason to believe that the target subject is present.  Investigative agency(ies) will collect the identifiers emitted by cellular devices in the immediate vicinity of the target cellular device(s) when the subject is in multiple locations and/or multiple times at a common location.  Through the process of elimination the investigative agency(ies) will use this information to identify the target cellular device(s), because only the target cellular device(s) unique identifiers will be present in all or nearly all locations.  Once investigators ascertain the identity of the target cellular device(s) used by the target subject, they will cease using the investigative technique.

The target subject is currently believed to be located inside the Eastern District of Missouri.  Before using the cell-site simulator, the investigative agency(ies) will first take steps to determine that the target subject is in the Eastern District of Missouri.  Such steps may include physical surveillance, or other investigative techniques.  Pursuant to Rule 41(b)(2), law enforcement may use the cell-site simulator outside the Eastern District of Missouri provided the target subject is within the district when the warrant is issued.  After the investigative agency(ies) determine that

19

the target subject is in the Eastern District of Missouri, they seek to identify cellular device(s) used by the target subject, including by use of a cell-site simulator, without geographic limitation.

The investigative techniques described herein may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Device, and law enforcement will limit collection of information from devices other than the Target Cellular Device. To the extent that any information from a cellular device other than the Target Cellular Device is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Device from all other cellular devices.

None of the investigative techniques that may be employed as a result of the present application and affidavit require a physical intrusion into a private space or a physical trespass. Electronic surveillance techniques such as pen register and cellular telephone identification typically have not been limited to daytime use only. Furthermore, the criminal conduct being investigated is not limited to the daytime. Therefore, the fact that the present application requests a warrant based on probable cause should not limit the use of a cell-site simulator to daytime use only. Accordingly, the investigative agency(ies), request the ability to employ the cell-site simulator at any time, day or night.

Identification of cellular devices used by the target subject by the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

### Request for Authorization to Use a Cell-site Simulator to Capture Signals Emitted by Cellular Telephones

Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

In light of the foregoing, I respectfully request, pursuant to Federal Rule of Criminal Procedure 41 and Title 18, United States Code, Section 3123, that this Court issue a warrant authorizing the investigative agency(ies) to employ a cell-site simulator, described in this Affidavit and Attachment A, to capture and analyze radio signals, including the unique identifiers emitted by the target cellular device(s) used by the **target subject**, but not the content of any communications, to determine the target cellular device(s) telephone number, ESN or IMSI for a period of forty-five (45) days, during all times of day or night, following the issuance of the Court's Warrant -- *i.e.,* from June 18, 2018, to August 1, 2018, 11:59 p.m. (CT). The cell-site simulator may capture information related to such cellular telephone(s) when the telephone is located in a protected space such as a residence.

I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice for a period of six months from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cellular Device would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior,

21

notify confederates, and flee from prosecution.  See 18 U.S.C. § 3103a(b)(1).  There is reasonable necessity for the use of the technique described above, for the reasons set forth above.  See 18 U.S.C. § 3103a(b)(3).

Given the nature of the investigation described herein, agents do not believe the investigation will reasonably be concluded in the next 180 days. Any safety concerns to cooperators, undercover agents, witnesses that will not be resolved or mitigated in less than 6 months.

I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cellular Device outside of daytime hours.

Finally, in light of the ongoing nature of the investigation as reflected in the attached Affidavit, applicant requests that the Applications, the Affidavit, and Warrant be sealed.

Daniel Hill
Task Force Officer
Drug Enforcement Administration

SUBSCRIBED and SWORN to before me this 18th day of June, 2018.

DAVID D. NOCE
United States Magistrate Judge

22

## ATTACHMENT A

PURSUANT TO AN INVESTIGATION OF:

ANDRE SMALLWOOD (DOB: 1/17/1986; SSN: XXX-XX-1031) (hereinafter the "**target subject**")

for violations of Title 21, United States Code, Sections 841(a)(l) and 846 (hereinafter the "subject offense(s)"), the Warrant authorizes the Drug Enforcement Administration and the Federal Bureau of Investigation and other authorized federal/state/local law enforcement agencies (hereinafter referred to as "investigative agency(ies)") to use an electronic surveillance technique, that being a cell-site simulator (hereinafter "cell-site simulator") for a period of forty-five (45) days following the issuance of the Warrant i.e., from July 18, 2018, to August 1, 2018, 11:59 p.m. (CT), at all times of day and night, to determine the electronic identifying numbers of any cellular device(s) (hereinafter referred to as the "target cellular device(s)") used by the target subject by collecting radio signals, including the unique identifiers, emitted by the target cellular device(s) and other cellular devices in its vicinity, when the investigative agency(ies) have reason to believe that the target subject is present.

The Warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and the Warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. See 18 U.S.C. § 3103a(b)(2).

Identification of cellular devices used by the target subject by the methods described herein will begin within ten (10) days of the date of issuance of the requested Warrant and Order.

The investigative agency(ies) will make no affirmative investigative use of any identifiers collected from cellular devices other than the target cellular device(s), except to identify the target cellular device(s) used by the target subject and distinguish it from the other cellular devices. Once investigators ascertain the identity of the target cellular device(s), they will end the collection, and any information collected concerning cellular devices other than the target cellular device(s) will be deleted.